**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| MALGORZATA SZYNKOWSKA,<br><br>Plaintiff,<br><br>**v.**<br><br>STATE OF WASHINGTON; WASHINGTON STATE PATROL; WASHINGTON STATE DEPARTMENT OF LICENSING; MARCUS GLASPER, in his official capacity as Director of the Washington State Department of Licensing; CITY OF BREMERTON; and KITSAP COUNTY,<br><br>Defendants. | Case No. 3:26-cv-5905<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Malgorzata Szynkowska, by and through her undersigned counsel, alleges as follows upon personal knowledge as to her own acts and experiences, and upon information and belief, including the investigation of counsel and review of public records, as to all other matters:

## I.  INTRODUCTION

1.    This is a civil rights action brought by Malgorzata Szynkowska, a Deaf woman whose primary language is American Sign Language ("ASL"), against the State of Washington, the Washington State Patrol ("WSP"), the Washington State Department of Licensing ("DOL"), Marcus Glasper in his official capacity as Director of DOL, the City of Bremerton, and Kitsap

COMPLAINT - Case No. 3:26-cv-5905
Page 1

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

County for disability discrimination and the systemic failure to provide qualified sign language interpreters and other auxiliary aids and services necessary for effective communication, in violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504").

2.    On August 13, 2023, Ms. Szynkowska was involved in a minor traffic collision in Bremerton, Washington. From the first moments of the ensuing law enforcement contact, officers of the Bremerton Police Department ("BPD") and troopers of the WSP knew that Ms. Szynkowska is Deaf. She asked for an ASL interpreter, including in a handwritten note that reads, in her own words, "I need interpreter." No interpreter was ever provided.

3.    Instead, over the course of approximately four hours, Ms. Szynkowska was subjected to a roadside investigation, a horizontal gaze nystagmus test, a custodial arrest, handcuffing, transport to a hospital, a warrant application, and a compelled blood draw, all conducted through improvised scribbled notes and gestures that she could not meaningfully understand. Because Defendants provided no interpreter, the information that hearing arrestees routinely receive, including the reason for the arrest, the content of the warnings officers attempted to convey, and the reason her blood was being taken from her body, was never communicated to her in any language she understands.

4.    WSP documentation of the incident inaccurately recorded that Ms. Szynkowska's native language is "English" and that no interpreter was requested, even though the troopers' own contemporaneous handwritten notes preserve her written plea for an interpreter and a trooper's response, "I can see if we can find one."

5.    At the end of the night, troopers left Ms. Szynkowska at her home, without her house keys, and, in writing, advised her to look for an open window and to "pop a screen off" to get into her own house.

COMPLAINT - Case No. 3:26-cv-5905
Page 2

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

6. The United States Attorney's Office for the Western District of Washington subsequently opened investigations of both the WSP and the BPD arising out of their treatment of Ms. Szynkowska under the ADA.

7. The discrimination did not end on August 13, 2023. In the criminal prosecution, license suspension, and compliance processes that followed, Ms. Szynkowska was repeatedly denied qualified interpreters: at the DOL administrative hearing process concerning her driver's license; at the DOL's Bremerton field office; at a court-ordered ignition interlock appointment; at court-ordered driver education and treatment programs; at probation appointments; and during approximately twenty-four hours of incarceration in the Kitsap County jail in February 2025.

8. Because the required classes, evaluations, and treatment were never made accessible to her, Ms. Szynkowska was then accused of "noncompliance." On August 5, 2025, the State moved to revoke her suspended sentence for failing to complete the very programs from which she had been excluded on the basis of her disability.

9. Ms. Szynkowska brings this action for declaratory and injunctive relief, compensatory damages, and reasonable attorneys' fees and costs.

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because Plaintiff's claims arise under the laws of the United States, including Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

11. This Court will have supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims that Plaintiff intends to add by amendment against Defendants City of Bremerton and Kitsap County, as described in paragraph 84 below, because those claims will be so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution. Plaintiff does not assert any state law claim in this action against the State of Washington, the Washington State Patrol, or the Washington State

COMPLAINT - Case No. 3:26-cv-5905
Page 3

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

Department of Licensing; nothing in this Complaint invokes, or consents to, this Court's jurisdiction over any such claim; and Plaintiff expressly reserves all state law claims against those Defendants, including her claims under the Washington Law Against Discrimination, RCW 49.60 *et seq.*, for the courts of the State of Washington.

12. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Federal Rule of Civil Procedure 57, and the remedial provisions of the ADA and Section 504.

13. Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this District and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, in Kitsap County, Washington. Assignment to the Tacoma Division is proper under Local Civil Rule 3(e)(1) because Plaintiff's claims arose in Kitsap County.

14. This action does not seek review, modification, or vacatur of any judgment or order of any Washington court or administrative tribunal, and does not seek to enjoin, stay, or otherwise interfere with any past or pending proceeding in the Kitsap County District Court, including State v. Szynkowska, No. 350415363, or with the enforcement of any order of that court. Plaintiff does not challenge the validity of her arrest, her conviction, her sentence, or the suspension of her driving privilege. She seeks damages for Defendants' denial of effective communication, and prospective accommodations to make the services, programs, and activities she is required to use accessible to her, relief that no state criminal or administrative proceeding can award.

### III.  PARTIES

15. Plaintiff Malgorzata Szynkowska is, and at all relevant times was, a resident of Gig Harbor, Washington. Ms. Szynkowska is Deaf and communicates primarily in ASL.

16. Ms. Szynkowska was born in Poland and has lived in the United States for approximately four decades. She learned ASL after moving to the United States, and ASL is now her primary and preferred language. English is not her native language. ASL has a grammar and

COMPLAINT - Case No. 3:26-cv-5905
Page 4

EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

syntax distinct from English, and Ms. Szynkowska has, at most, a limited ability to read and write English. She cannot meaningfully understand complex or legally significant information conveyed in written English, particularly hurried handwritten notes.

17.    Ms. Szynkowska is deaf within the meaning of federal law, is substantially limited in the major life activities of hearing and speaking, and is a person with a disability within the meaning of the ADA, 42 U.S.C. § 12102, and Section 504, 29 U.S.C. § 705(9)(B). She is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2) because she is eligible to receive, and was required to participate in, the services, programs, and activities of each Defendant.

18.    Defendant State of Washington is a sovereign state. Through its agencies, including WSP and DOL, it is a public entity within the meaning of 42 U.S.C. § 12131(1) and its implementing regulation, 28 C.F.R. § 35.104, and is a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794.

19.    Defendant Washington State Patrol is an agency of the State of Washington charged with statewide law enforcement, including traffic enforcement and impaired driving investigations. WSP is a public entity within the meaning of 42 U.S.C. § 12131(1) and, on information and belief, is a recipient of federal financial assistance, including federal highway safety and law enforcement grant funds, within the meaning of 29 U.S.C. § 794. WSP's federal financial assistance includes, on information and belief, Motor Carrier Safety Assistance Program grants from the Federal Motor Carrier Safety Administration and highway safety grant funds administered under 23 U.S.C. §§ 402 and 405.

20.    Defendant Washington State Department of Licensing is an agency of the State of Washington that administers driver licensing, implied consent license suspensions, administrative hearings concerning driving privileges, and the ignition interlock driver's license program under RCW 46.20.385. DOL is a public entity within the meaning of 42 U.S.C. § 12131(1) and, on information and belief, is a recipient of federal financial assistance within the meaning of 29 U.S.C.

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

§ 794, including, on information and belief, commercial driver's license program implementation grants and other funds from the Federal Motor Carrier Safety Administration and the United States Department of Transportation.

21. Defendant Marcus Glasper is the Director of the Washington State Department of Licensing and is the principal executive officer of DOL. As Director, he is responsible for the adoption, implementation, and enforcement of the policies, practices, procedures, and training of DOL challenged in this action, including the accessibility of DOL's administrative hearing process, field office services, licensing and reinstatement services, and ignition interlock program to deaf and hard of hearing individuals. He is sued in his official capacity only, and only for declaratory and prospective injunctive relief. Pursuant to Federal Rule of Civil Procedure 25(d), any successor in office is automatically substituted as a party.

22. Defendant City of Bremerton is a municipal corporation organized under the laws of the State of Washington. The City operates the Bremerton Police Department. The City is a public entity within the meaning of 42 U.S.C. § 12131(1) and, on information and belief, is a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794.

23. Defendant Kitsap County is a municipal corporation organized under the laws of the State of Washington. The County operates, among other programs, the Kitsap County jail, the Kitsap County District Court probation department, and the Kitsap County Prosecuting Attorney's Office. The County is a public entity within the meaning of 42 U.S.C. § 12131(1) and, on information and belief, is a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794.

24. At all relevant times, each Defendant acted by and through its officers, employees, and agents, each of whom acted within the course and scope of his or her employment or agency.

## IV.  FACTUAL ALLEGATIONS

**A.  Ms. Szynkowska's Disability and Communication Needs**

COMPLAINT - Case No. 3:26-cv-5905
Page 6

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

25. Ms. Szynkowska is Deaf. She communicates primarily in ASL and requires qualified ASL interpreters, including, for complex or high-stakes communications, a certified deaf interpreter working with a hearing interpreter, in order to communicate effectively.

26. Because ASL is itself a second language for Ms. Szynkowska, and because written English is even less accessible to her, written notes are not an effective means of communicating with her about anything beyond the simplest matters. Her limited written English is apparent on the face of the notes she exchanged with the troopers on August 13, 2023.

27. At all relevant times, Ms. Szynkowska held a valid Washington driver's license. She kept in her vehicle an information sheet designed to inform law enforcement officers how to communicate with deaf people, including through interpreter services.

**B. The August 13, 2023 Collision and Initial Police Response**

28. On August 13, 2023, at approximately 6:11 p.m., Ms. Szynkowska was involved in a traffic collision in front of the Bremerton Police Department office located at 1025 Burwell Street, Bremerton, Washington. The other vehicle involved in the collision left the scene before the WSP arrived.

29. BPD officers, including Sergeant Gerrity and Officer M. Murphy, responded to the collision, along with an aid crew that evaluated Ms. Szynkowska at the scene. BPD officers promptly realized that Ms. Szynkowska is Deaf.

30. Ms. Szynkowska motioned to the responding officers that she is Deaf and could not hear them. She requested an ASL interpreter and directed the responding officers to the information sheet in her vehicle describing how to communicate with deaf people.

31. No BPD officer summoned or attempted to summon a qualified ASL interpreter, in person or through video remote interpreting, at any point.

32. Instead, Ms. Szynkowska was left waiting at the side of the road for approximately thirty minutes while officers spoke with others, including the other driver before that driver

COMPLAINT - Case No. 3:26-cv-5905
Page 7

EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

departed. She had no way to know what was being said about her or the collision and no opportunity to give her own account of the collision.

33.    BPD handled the collision investigation and caused Ms. Szynkowska's vehicle to be impounded by Kitsap Towing, with her house keys inside it.

34.    BPD officers summoned the WSP to conduct a driving under the influence ("DUI") investigation. On information and belief, BPD officers advised WSP dispatch and responding troopers that the driver was deaf.

**C.  The WSP Investigation and Arrest Without Effective Communication**

35.    WSP Trooper Gabriel Krebs arrived at the scene at approximately 6:39 p.m. Trooper Krebs knew immediately that Ms. Szynkowska is Deaf. His report records that she "used sign language to try and speak with" him and that he does not speak sign language.

36.    Trooper Krebs did not summon or attempt to summon a qualified ASL interpreter, in person or through video remote interpreting, at any point during a contact that lasted several hours.

37.    Trooper Krebs instead attempted to communicate by gesturing, by typing an introduction into the notes application of his phone, which Ms. Szynkowska indicated she could not read because the font was too small, and by scribbling questions and commands on a notepad, interspersed with what his report describes as "verbal cues" directed at a woman he knew could not hear him.

38.    Through handwritten notes, Trooper Krebs administered a horizontal gaze nystagmus test. When he wrote "look at my pen with your eyes only," Ms. Szynkowska responded, in writing, "what you mean." His report concedes that no other field sobriety tests were conducted "due to language barrier."

39.    At approximately 6:50 p.m., Trooper Krebs arrested Ms. Szynkowska for DUI, conveying the arrest by a scribbled note reading "you are under arrest for DUI 1850." He placed her in handcuffs. Ms. Szynkowska, whose hands are her means of communication and who had an

EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

injured wrist, was thereby deprived of any ability to communicate. She was handcuffed behind her back.

40.    Trooper Krebs attempted to have Ms. Szynkowska read her constitutional rights from a department-issued Miranda card written in English. She could not read it. He wrote "Please read your rights ok." His report records that she "was not reading the Miranda card" and "did not seem to want to read her Rights." At no time were Ms. Szynkowska's constitutional rights communicated to her in a language she understands.

41.    At no time was Ms. Szynkowska given, in a manner she could understand, the implied consent warnings required by RCW 46.20.308. The constitutional rights and implied consent warning sections of the WSP DUI Arrest Report for Ms. Szynkowska are crossed out and unsigned.

**D.  The Hospital, the Warrant, and the Compelled Blood Draw**

42.    Trooper Krebs transported Ms. Szynkowska to St. Michael Medical Center in Silverdale, Washington. WSP Trooper Colin O'Rourke met them there at approximately 7:25 p.m. and took over the passing of notes because, in Trooper Krebs's words, Ms. Szynkowska "clearly was not happy" with him. Trooper O'Rourke observed that Ms. Szynkowska had been crying, and his report records that as she attempted to tell him about the crash she "repeatedly would start to cry hysterically."

43.    While waiting in the hospital parking lot, Ms. Szynkowska again asked for an interpreter, writing in her own hand, "yes & I need interpreter." Trooper Krebs wrote back, "I can see if we can find one."

44.    Neither Trooper Krebs nor Trooper O'Rourke, nor anyone else, took any step to obtain a qualified interpreter, in person or through video remote interpreting, in response to that request or at any other time.

45.    Trooper Krebs applied for a telephonic search warrant for Ms. Szynkowska's blood from the hospital parking lot. The warrant was approved on a recorded line at approximately 7:55

COMPLAINT - Case No. 3:26-cv-5905
Page 9

EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

p.m. Ms. Szynkowska was shown the search warrant, a legal document written in English. She could not read it and did not know what it said.

46. At approximately 8:11 p.m., a phlebotomist drew two vials of Ms. Szynkowska's blood. Ms. Szynkowska submitted to the blood draw without ever being told, in any language she understands, what the procedure was for, what would be done with her blood, or what her options were, information that is routinely communicated to hearing arrestees. She later testified at her administrative hearing that she was forced to do a blood test and had no idea what it was for.

47. When a trooper presented Ms. Szynkowska with the Receipt for Property Taken form and asked her, in writing, to acknowledge the blood draw, she did not respond because she could not understand what was being asked of her. On the acknowledgment line of the receipt and the warrant return, WSP recorded, "subject would not respond," recasting the direct consequence of Defendants' own failure to provide an interpreter as obstinacy by Ms. Szynkowska.

**E. Ms. Szynkowska Is Left Locked Out of Her Home**

48. Trooper O'Rourke then drove Ms. Szynkowska to her home in Gig Harbor. On arrival, she discovered that her house keys were in her impounded vehicle.

49. Rather than promptly retrieving her keys, the troopers pressed her, through scribbled notes, to break into her own home. Trooper O'Rourke's notes include: "my advice is for you to try to find a way in, maybe a window?"; "If a window is open pop a screen off?"; "I understand you dont have the key at least go try the door"; and "I'm trying to be nice, but I cant stay here any longer."

50. Eventually, Trooper Krebs retrieved Ms. Szynkowska's house keys from the tow yard and brought them to her home, leaving a handwritten note stating, among other things, where her car had been impounded, that her blood would be placed into evidence, and that she should "follow up when the courts contact you." The troopers cleared the residence at approximately 10:30 p.m.

51. Ms. Szynkowska was never issued a citation or charging document that day. Because nothing had been communicated to her in a language she understands, she did not understand that

COMPLAINT - Case No. 3:26-cv-5905
Page 10

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

she had been arrested, what she was suspected of, what would happen to her blood, or what would happen next. She later described the experience as terrifying.

**F.  WSP's False and Misleading Documentation**

52.    The WSP DUI Arrest Report interview form for Ms. Szynkowska states that her native language is "English." That statement is false.

53.    The same form states "No" in response to the question "Interpreter requested?" That statement is false. Ms. Szynkowska requested an interpreter at the scene and again, in writing, at the hospital, as preserved in the troopers' own notes.

54.    On information and belief, neither WSP nor BPD had in place, or followed, adequate policies, training, or procedures for securing qualified ASL interpreters, including video remote interpreting, during law enforcement encounters with deaf individuals, notwithstanding the foreseeability and regularity of such encounters.

**G.  The Federal Civil Rights Investigations**

55.    On November 2, 2023, through counsel at the Northwest Justice Project, Ms. Szynkowska submitted an ADA complaint to the United States Attorney's Office for the Western District of Washington concerning the denial of interpreter services on August 13, 2023.

56.    By letter dated January 5, 2024, the United States Attorney's Office notified Ms. Szynkowska that it was opening an investigation of her complaint that the WSP violated the ADA, under USAO No. 2024v00008 and DJ No. 204-82-339.

57.    By letter dated February 26, 2024, the United States Attorney's Office notified Ms. Szynkowska that it was opening an additional investigation concerning the Bremerton Police Department, under USAO No. 2024v00163 and DJ No. 204-82-340, stating that the records received "raise questions about Bremerton Police Department's policies and practice regarding effective communication with constituents with communication disabilities."

58.    By letter dated August 30, 2024, the United States Attorney's Office confirmed that its investigation of the WSP was continuing.

COMPLAINT - Case No. 3:26-cv-5905
Page 11

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

**H.  The Toxicology Report and Criminal Prosecution**

59.   By report dated June 28, 2024, more than ten months after the blood draw, the WSP toxicology laboratory reported a blood ethanol result for Ms. Szynkowska of 0.23 grams per 100 milliliters, plus or minus 0.02.

60.   On August 16, 2024, the State filed a criminal complaint against Ms. Szynkowska in Kitsap County District Court, No. 350415363, charging one count of DUI under RCW 46.61.502(1), with a special allegation under RCW 46.61.5055 of an alcohol concentration of 0.15 or higher.

61.   On October 3, 2024, the Kitsap County District Court found probable cause and imposed conditions of release. The case proceeded through pretrial hearings on December 3, 2024, and February 3, 2025.

62.   On February 3, 2025, the Kitsap County District Court entered an order of restitution for emergency response costs, reciting that Ms. Szynkowska had been found guilty of, or had prosecution deferred for, a qualifying offense, and ordering her to pay $300 to the Washington State Patrol. On information and belief, Ms. Szynkowska was sentenced on or about February 3, 2025, to a sentence including a suspended term of confinement, twenty-four hours of confinement, fines, fees, and assessments totaling hundreds of dollars per month in payments, probation supervision, an ignition interlock requirement, a substance use disorder assessment and treatment, a mental health evaluation, and DUI education requirements.

**I.  The DOL Suspension Process Is Conducted Without Effective Communication**

63.   Following the toxicology report, DOL initiated an administrative suspension of Ms. Szynkowska's driver's license under Washington's implied consent laws, based on warnings that had never been communicated to her in a language she understands.

64.   Ms. Szynkowska timely sought an administrative hearing. The hearing process was repeatedly impeded by DOL's failure to provide effective interpreter services. An October 21, 2024 session had to be rescheduled because the interpreter provided could not interpret effectively

COMPLAINT - Case No. 3:26-cv-5905
Page 12

for Ms. Szynkowska, who requires a certified deaf interpreter for such proceedings. On information and belief, DOL did not provide a certified deaf interpreter at any stage of the hearing process.

65. At the hearing, Ms. Szynkowska testified, among other things, that she had asked for an interpreter on August 13, 2023, that she was forced to take a blood test without knowing what it was for, that she could not read the search warrant, and that she cannot meaningfully read English.

66. By order dated November 15, 2024, a DOL hearing examiner sustained the suspension of Ms. Szynkowska's driving privilege.

67. By letter dated on or about December 8, 2024, DOL informed Ms. Szynkowska, in written English only, that she could not drive for three months, through on or about March 8, 2025.

68. On one or more occasions after DOL suspended her driving privilege, Ms. Szynkowska went in person to the DOL office in Bremerton seeking assistance in understanding the status of her license and the requirements for reinstatement. The dates of those visits are recorded in DOL's own files. On each such occasion, DOL provided no interpreter and no other auxiliary aid or service sufficient for effective communication, and Ms. Szynkowska left unable to obtain or understand the information she needed.

69. On December 6, 2024, Ms. Szynkowska appeared for an appointment with an ignition interlock provider approved under DOL's ignition interlock program, in Tacoma, to comply with her interlock requirement. No interpreter was provided. Unable to understand the instructions for the device, she attempted for approximately two hours to complete the required procedure before giving up. She was unable to complete the ignition interlock requirement. The ignition interlock requirement is administered through DOL's ignition interlock driver's license program under RCW 46.20.385; ignition interlock devices and their vendors are certified and regulated by the Washington State Patrol under RCW 43.43.395 and chapter 204-50 WAC, and Defendants may condition vendor participation on compliance with federal disability law.

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

70. On at least three separate occasions after her sentencing, Ms. Szynkowska attempted to enroll in and complete the driver education and DUI-related classes required of her, approaching at least three different providers. Each time, the provider failed or refused to arrange a qualified interpreter, and Ms. Szynkowska was turned away or was unable to participate. On information and belief, the education and treatment requirements are administered through providers approved under RCW 46.61.5056 and certified by the State of Washington; the identities of the providers Ms. Szynkowska approached, and the dates of her attempts, are reflected in the records of those providers and of the Kitsap County District Court probation department, which monitors and enforces compliance with those requirements. As a result of the cumulative failures of communication and access, Ms. Szynkowska remained unable to drive long after March 8, 2025, isolating her and impairing her ability to work, obtain services, and manage her daily life.

**J. Incarceration and Probation Without Effective Communication**

71. On or about February 10, 2025, Ms. Szynkowska reported to the Kitsap County jail in Port Orchard to serve approximately twenty-four hours of confinement. Kitsap County provided no interpreter at booking, during confinement, or at release. For the entire period she was incarcerated without any means of effective communication with jail staff, without effective communication of jail rules, procedures, or her rights, and without any ability to seek help had anything gone wrong.

72. Ms. Szynkowska was required to attend probation appointments with the Kitsap County District Court probation department, including on or about March 31, 2025, and to make substantial monthly payments. Kitsap County provided no qualified interpreter for probation appointments, and the requirements of her probation, including the substance use disorder treatment, mental health evaluation, and education conditions, were never effectively communicated to her.

73. On or about April 10, 2025, Ms. Szynkowska participated in a video meeting concerning her ADA complaints at which, on information and belief, representatives of the

COMPLAINT - Case No. 3:26-cv-5905
Page 14

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

responsible law enforcement agency apologized and offered her $1,000. She did not accept the offer.

74.    On April 21, 2025, Ms. Szynkowska contacted the Assistant United States Attorney handling her ADA complaints to report the denial of interpreter services at the Kitsap County jail.

**K.  Ms. Szynkowska Is Threatened with Revocation for the Consequences of Defendants' Discrimination**

75.    Because no provider, court program, or agency ensured interpreter access, Ms. Szynkowska was unable to complete the substance use disorder treatment, proof of treatment, and mental health evaluation requirements of her sentence.

76.    On August 5, 2025, the State moved to revoke Ms. Szynkowska's suspended sentence based on noncompliance with the substance use disorder treatment condition, failure to provide proof of substance use disorder treatment, and failure to provide proof of a mental health evaluation. A revocation hearing was set for September 4, 2025, with mandatory in-person appearance.

77.    As a direct consequence of Defendants' failure to make the programs she was ordered to complete accessible to her, Ms. Szynkowska was required to defend a revocation proceeding that placed her suspended term of confinement at risk, and she has borne the fear, disruption, and expense of that exposure. She does not seek relief from any order entered in that proceeding, and the validity of any such order is not at issue in this action; the exposure and its consequences, created by Defendants' discrimination, are among her injuries.

**L.  Ms. Szynkowska's Ongoing, Court-Compelled Interactions with Defendants**

78.    Ms. Szynkowska's continuing interactions with Defendants are not speculative. They arise from obligations that Defendants themselves have imposed on her and from services she is legally required, and legally entitled, to use.

79.    As of the filing of this Complaint, Ms. Szynkowska remains subject to probation supervision by the Kitsap County District Court probation department under her February 3, 2025 sentence, including mandatory in-person probation appointments and continuing payment

COMPLAINT - Case No. 3:26-cv-5905
Page 15

EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

obligations. A court imposing sentence for an offense of this kind may suspend a period of confinement for up to five years, RCW 46.61.5055(11)(a), and Ms. Szynkowska's suspended term of confinement in the Kitsap County jail remains subject to enforcement, the State having already moved once to revoke it based on noncompliance caused by the very denials of access alleged herein. She remains obligated, as conditions of that sentence, to complete a substance use disorder evaluation and treatment, a mental health evaluation, and DUI education, none of which has been made accessible to her. Renewed confinement in the same jail, under the same conditions of communication isolation, is therefore a real and immediate threat.

80.    Ms. Szynkowska likewise remains dependent on DOL's services, programs, and activities: she must complete DOL's requirements for reinstatement of her driving privilege, including in-person and telephonic transactions with DOL and visits to DOL field offices, including the Bremerton field office; she must use and maintain an ignition interlock device through DOL's ignition interlock program and its approved vendors; and she will be required, on a recurring basis, to renew her license and transact other licensing business with DOL for as long as she drives.

81.    Each of these required interactions involves complex, legally consequential communication for which Ms. Szynkowska requires a qualified ASL interpreter and, for high-stakes proceedings, a certified deaf interpreter. At every past interaction of each of these types, including every probation appointment, the jail confinement, the administrative hearing process, the field office visit, the ignition interlock appointment, and each attempted enrollment in required education and treatment, Defendants Kitsap County, the State of Washington, and DOL provided no qualified interpreter, despite Ms. Szynkowska's express requests and Defendants' actual notice of her need. On information and belief, those Defendants still maintain no policy or practice that ensures qualified interpreter services at such interactions. Absent injunctive relief, Ms. Szynkowska's impending probation appointments, evaluations, treatment, classes, ignition

COMPLAINT - Case No. 3:26-cv-5905
Page 16

EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

interlock service visits, hearings, and licensing transactions will again take place without effective communication.

**M.  Injuries**

82.  As a direct and proximate result of Defendants' acts and omissions, Ms. Szynkowska has suffered and continues to suffer injury, including deprivation of her federally and state protected rights; fear, terror, anxiety, humiliation, degradation, and emotional distress; deprivation of liberty and bodily autonomy without effective communication; exclusion from and denial of the benefits of public services, programs, and activities; prolonged loss of her driving privilege and resulting isolation; exposure to additional criminal sanctions; and out-of-pocket losses, including fines, fees, program costs, towing and impound charges, and transportation costs.

83.  Defendants' conduct was intentional and undertaken with deliberate indifference to Ms. Szynkowska's federally protected rights. Each Defendant had actual knowledge of her deafness and of her need for interpreter services, including through her express requests, and each failed to act on that knowledge.

84.  Plaintiff has presented, or is contemporaneously presenting, a standard tort claim to the Office of Risk Management of the Washington State Department of Enterprise Services pursuant to RCW 4.92.100 and RCW 4.92.110, and claims for damages to the City of Bremerton and to Kitsap County pursuant to RCW 4.96.020. This Complaint asserts claims arising only under federal law. Plaintiff will amend as of right, or will move for leave to amend, to add claims under the Washington Law Against Discrimination, RCW 49.60 *et seq.*, against Defendants City of Bremerton and Kitsap County promptly after the sixty calendar day periods prescribed by RCW 4.96.020(4) have elapsed. RCW 4.92.110; RCW 4.96.020(4).

85.  Every act and omission alleged in this Complaint occurred on or after August 13, 2023. Each denial of qualified interpreter services and effective communication alleged herein, including during the August 13, 2023 law enforcement encounter; at each session of the DOL administrative hearing process, including on October 21, 2024; in the November 15, 2024

COMPLAINT - Case No. 3:26-cv-5905
Page 17

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

suspension order and December 8, 2024 notice issued in written English only; at each of Ms. Szynkowska's visits to DOL's Bremerton field office; at the December 6, 2024 ignition interlock appointment; at each of her at least three attempts to enroll in required education and treatment programs; during Ms. Szynkowska's incarceration on or about February 10, 2025; and at each probation appointment, including on or about March 31, 2025, was a separate act or omission by the Defendant responsible for the program or service at issue, and each gives rise to its own claim for relief. Earlier acts and omissions are additionally alleged as evidence of each Defendant's knowledge and notice.

## V.  CLAIMS FOR RELIEF

### COUNT I

**Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.**

**(Against Defendants State of Washington and Washington State Patrol)**

86.    Plaintiff realleges and incorporates by reference paragraphs 1 through 85 above as though fully set forth herein. No allegation of any other Count is incorporated into this Count.

87.    Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. §§ 12102 and 12131(2).

88.    Defendants State of Washington and WSP are public entities within the meaning of 42 U.S.C. § 12131(1). Their law enforcement activities, including traffic investigations, arrests, custodial transport, the administration of constitutional and statutory warnings, and the execution of search warrants, are services, programs, or activities within the meaning of 42 U.S.C. § 12132.

89.    With respect to those services, programs, and activities, Defendants were required to take appropriate steps to ensure that their communications with Plaintiff were as effective as their communications with others; to furnish appropriate auxiliary aids and services, including qualified interpreters on site or through video remote interpreting, where necessary to afford her an equal

COMPLAINT - Case No. 3:26-cv-5905
Page 18

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

opportunity to participate; and to give primary consideration to her expressed request for a sign language interpreter. 28 C.F.R. §§ 35.104, 35.160(a)(1), (b)(1), (b)(2).

90. Defendants excluded Plaintiff from participation in, denied her the benefits of, and subjected her to discrimination in those services, programs, and activities by reason of her disability, including by failing to provide qualified interpreter services or any other effective auxiliary aids and services despite her express requests; by conducting an hours-long custodial encounter, arrest, and compelled blood draw without effective communication; by failing to give primary consideration to her requested auxiliary aid; by relying on handwritten English notes they knew she could not understand; by falsely documenting that her native language is English and that no interpreter was requested; and by failing to maintain and implement adequate policies and training for communication with deaf individuals.

91. Defendants acted intentionally and with deliberate indifference to Plaintiff's federally protected rights. Their own records establish that they knew Plaintiff is Deaf, knew she had requested an interpreter, acknowledged in writing that they could try to find one, and provided none.

92. Congress validly abrogated the Eleventh Amendment immunity of the State of Washington and WSP as to the claims alleged in this Count. The conduct alleged also deprived Plaintiff of rights secured by the Due Process Clause of the Fourteenth Amendment: Defendants subjected a Deaf woman to hours of custodial detention, to the restraint of her hands, her sole means of communication, and to a compelled intrusion into her body, without ever conveying to her, in any language she could understand, the reason for her arrest, the warnings required by law, or the nature and basis of the warrant under which her blood was taken; and Defendants' failure to communicate the implied consent warnings required by RCW 46.20.308 in a manner Plaintiff could understand became the predicate for the subsequent suspension of her driving privilege.

COMPLAINT - Case No. 3:26-cv-5905
Page 19

EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

93.    As a direct and proximate result of Defendants' violations, Plaintiff suffered the injuries and damages described above and is entitled to compensatory damages, declaratory relief, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133 and 42 U.S.C. § 12205.

## COUNT II

**Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.**

**(Against Defendant City of Bremerton)**

94.    Plaintiff realleges and incorporates by reference paragraphs 1 through 85 above as though fully set forth herein. No allegation of any other Count is incorporated into this Count.

95.    Defendant City of Bremerton is a public entity within the meaning of 42 U.S.C. § 12131(1). Its police services, including collision response and investigation, witness interviews, and vehicle impoundment, are services, programs, or activities within the meaning of 42 U.S.C. § 12132.

96.    With respect to those services, programs, and activities, the City was required to take appropriate steps to ensure that its communications with Plaintiff were as effective as its communications with others; to furnish appropriate auxiliary aids and services, including qualified interpreters on site or through video remote interpreting, where necessary to afford her an equal opportunity to participate; and to give primary consideration to her expressed request for a sign language interpreter. 28 C.F.R. §§ 35.104, 35.160(a)(1), (b)(1), (b)(2).

97.    The City excluded Plaintiff from participation in, denied her the benefits of, and subjected her to discrimination in those services, programs, and activities by reason of her disability, including by failing to obtain or attempt to obtain a qualified interpreter after Plaintiff identified herself as Deaf and requested one; by denying her any opportunity to give her account of the collision while taking the account of the hearing driver; by disregarding the communication information sheet to which she directed officers; and by failing to maintain and implement

COMPLAINT - Case No. 3:26-cv-5905
Page 20

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

adequate policies and training for effective communication with deaf individuals, as reflected in the United States Attorney's Office investigation of the City's policies and practices.

98.     The City acted intentionally and with deliberate indifference to Plaintiff's federally protected rights.

99.     As a direct and proximate result of the City's violations, Plaintiff suffered the injuries and damages described above and is entitled to compensatory damages, declaratory relief, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133 and 42 U.S.C. § 12205.

## COUNT III

## Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.

## (Against Defendant Kitsap County)

100.     Plaintiff realleges and incorporates by reference paragraphs 1 through 85 above as though fully set forth herein. No allegation of any other Count is incorporated into this Count.

101.     Defendant Kitsap County is a public entity within the meaning of 42 U.S.C. § 12131(1). Its jail, probation supervision, court-ordered program administration, and related criminal legal system services are services, programs, or activities within the meaning of 42 U.S.C. § 12132.

102.     With respect to those services, programs, and activities, the County was required to take appropriate steps to ensure that its communications with Plaintiff were as effective as its communications with others; to furnish appropriate auxiliary aids and services, including qualified interpreters on site or through video remote interpreting, where necessary to afford her an equal opportunity to participate; and to give primary consideration to her expressed request for a sign language interpreter. 28 C.F.R. §§ 35.104, 35.160(a)(1), (b)(1), (b)(2).

103.     The County excluded Plaintiff from participation in, denied her the benefits of, and subjected her to discrimination in those services, programs, and activities by reason of her disability, including by incarcerating her for approximately twenty-four hours without any

COMPLAINT - Case No. 3:26-cv-5905
Page 21

EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

interpreter or other effective means of communication; by conducting probation appointments and imposing and monitoring conditions of supervision without effective communication; by failing to ensure that court-ordered evaluations, treatment, and education programs were accessible to her; and, through its probation department, which had actual knowledge that the required programs were inaccessible to Plaintiff, by reporting her as noncompliant and supporting enforcement proceedings without ever arranging the interpreter services that would have permitted compliance, administrative acts that are part of the County's probation program, with the result that Plaintiff was exposed to revocation of her suspended sentence for noncompliance that was itself the product of the denial of access.

104.   The County acted intentionally and with deliberate indifference to Plaintiff's federally protected rights, including after actual notice of her need for interpreter services.

105.   As a direct and proximate result of the County's violations, Plaintiff suffered the injuries and damages described above and is entitled to compensatory damages, declaratory and injunctive relief, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133 and 42 U.S.C. § 12205.

## COUNT IV

**Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.**

**(Against Defendants State of Washington and Washington State Department of Licensing, and Against Defendant Glasper in His Official Capacity for Prospective Relief Only)**

106.   Plaintiff realleges and incorporates by reference paragraphs 1 through 85 above as though fully set forth herein. No allegation of any other Count is incorporated into this Count.

107.   Defendants State of Washington and DOL are public entities within the meaning of 42 U.S.C. § 12131(1). DOL's administrative hearing process, field office services, licensing and reinstatement services, and ignition interlock program are services, programs, or activities within the meaning of 42 U.S.C. § 12132.

EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

108.    With respect to those services, programs, and activities, Defendants were required to take appropriate steps to ensure that their communications with Plaintiff were as effective as their communications with others; to furnish appropriate auxiliary aids and services, including qualified interpreters on site or through video remote interpreting, where necessary to afford her an equal opportunity to participate; and to give primary consideration to her expressed request for a sign language interpreter. 28 C.F.R. §§ 35.104, 35.160(a)(1), (b)(1), (b)(2).

109.    Defendants excluded Plaintiff from participation in, denied her the benefits of, and subjected her to discrimination in those services, programs, and activities by reason of her disability, including by failing to provide qualified interpreters, including a certified deaf interpreter, for the administrative hearing process concerning her driving privilege; by conducting that process and issuing legally consequential notices in written English only; by providing no interpreter services at its Bremerton field office; and by failing to ensure that the ignition interlock program, administered through approved vendors whom the State certifies and regulates under RCW 43.43.395 and chapter 204-50 WAC, was accessible to deaf participants.

110.    The suspension of Plaintiff's driving privilege deprived her of a property interest protected by the Due Process Clause of the Fourteenth Amendment. That suspension was predicated on implied consent warnings under RCW 46.20.308 that were never communicated to Plaintiff in any language she could understand, and it was sustained through a hearing process in which DOL failed, despite notice and her requests, to provide interpretation Plaintiff could understand, including a certified deaf interpreter. Plaintiff could not understand, and could not meaningfully participate in, the proceeding that cost her the right to drive.

111.    Plaintiff does not seek review, reversal, or vacatur of any suspension order, administrative decision, or criminal judgment. The allegations of this Count are made in support of Plaintiff's claims for damages and prospective relief under the federal disability statutes.

COMPLAINT - Case No. 3:26-cv-5905
Page 23

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

112. Defendants acted intentionally and with deliberate indifference to Plaintiff's federally protected rights, including after actual notice, through the hearing process itself, of her deafness and her need for qualified interpreter services.

113. Congress validly abrogated the Eleventh Amendment immunity of the State of Washington and DOL as to the claims alleged in this Count. In addition, and regardless of any Eleventh Amendment immunity of the State or DOL, Plaintiff seeks declaratory and prospective injunctive relief against Defendant Glasper in his official capacity as Director of DOL.

114. As a direct and proximate result of Defendants' violations, Plaintiff suffered the injuries and damages described above, including the prolonged loss of her driving privilege, and is entitled to compensatory damages, declaratory and injunctive relief, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133 and 42 U.S.C. § 12205.

## COUNT V

**Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

**(Against All Defendants; Against Defendant Glasper in His Official Capacity for**

**Prospective Relief Only)**

115. Plaintiff realleges and incorporates by reference paragraphs 1 through 85 above as though fully set forth herein. No allegation of any other Count is incorporated into this Count.

116. Plaintiff is an otherwise qualified individual with a disability within the meaning of 29 U.S.C. §§ 705 and 794.

117. On information and belief, each Defendant, and each program or activity of each Defendant at issue in this action, receives federal financial assistance within the meaning of 29 U.S.C. § 794(b), and each Defendant has thereby waived any immunity from suit under Section 504. 42 U.S.C. § 2000d-7. The federal financial assistance received by Defendants includes, on information and belief, United States Department of Transportation and United States Department

EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

of Justice grant funds supporting the very law enforcement, licensing, jail, and probation programs at issue in this action.

118.   By the acts and omissions alleged above, each Defendant excluded Plaintiff from participation in, denied her the benefits of, and subjected her to discrimination under its programs and activities solely by reason of her disability, including by denying her the auxiliary aids and services necessary for effective communication.

119.   Each Defendant acted intentionally and with deliberate indifference to Plaintiff's federally protected rights.

120.   As a direct and proximate result of Defendants' violations, Plaintiff suffered the injuries and damages described above and is entitled to compensatory damages, declaratory and injunctive relief, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 794a. Plaintiff also seeks prospective declaratory and injunctive relief against Defendant Glasper in his official capacity.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant the following relief:

A.   A declaration that Defendants' acts and omissions described herein violated Title II of the ADA and Section 504 of the Rehabilitation Act;

B.   A permanent injunction requiring Defendants State of Washington, the Washington State Department of Licensing, Defendant Glasper in his official capacity, and Kitsap County to adopt, implement, and enforce policies, procedures, and training sufficient to ensure effective communication with Plaintiff, and with other deaf and hard of hearing individuals similarly situated, in the services, programs, and activities in which Plaintiff remains and will remain a participant, including probation supervision, court-ordered evaluation, treatment, and education programs, any confinement in the Kitsap County jail, administrative hearings, field office and license reinstatement services, and the

EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

ignition interlock program, including the provision of qualified ASL interpreters and certified deaf interpreters, in person or through video remote interpreting;

C.   A permanent injunction requiring Defendants State of Washington, DOL, and Kitsap County to provide Plaintiff with qualified interpreter services, including certified deaf interpreters where necessary for effective communication, in connection with any evaluation, treatment, education, ignition interlock, probation, licensing, or reinstatement requirement applicable to her, so that she has an equal opportunity to understand and comply with all requirements imposed on her;

D.   An award of compensatory damages against each Defendant other than Defendant Glasper in an amount to be proven at trial;

E.   An award of reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a(b), and any other applicable authority;

F.   Prejudgment and postjudgment interest to the fullest extent permitted by law; and

G.   Such other and further relief as the Court deems just and proper.

## VII.  DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

DATED this 10th day of August, 2026

Respectfully submitted,

LAW OFFICE OF CARL J. MARQUARDT PLLC

By:  /s/ Carl J. Marquardt
Carl J. Marquardt, WSBA No. 23257
1126 34th Avenue, Suite 311
Seattle, Washington 98122-5137
Telephone: (206) 388-4498
Fax: (206) 693-2376
carl@cjmlawoffice.com

COMPLAINT - Case No. 3:26-cv-5905
Page 26

EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700

EISENBERG & BAUM, LLP

By: /s/ Andrew Rozynski
Andrew Rozynski, Esq.
24 Union Square East, Penthouse
New York, New York 10003
Telephone: (212) 353-8700
arozynski@eandblaw.com
Application for admission pro hac vice forthcoming

Attorneys for Plaintiff Malgorzata Szynkowska

COMPLAINT - Case No. 3:26-cv-5905
Page 27

**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, New York 10003
Tel. (212) 353-8700